## LAUGHLIN v. CALUMET & CHICAGO CANAL & DOCK CO. et al.

### (Circuit Court of Appeals, Seventh Circuit. January 26, 1895.)

### No. 195.

1. LIMITATIONS—SUIT AGAINST STRANGER.

 The pendency of a suit affecting the title to land, to which the person in possession of such land is not a party, cannot prevent the running of the statute of limitations in favor of such person.

2. BANKRUPTCY—TITLE OF ASSIGNEE.

 An assignee in bankruptcy takes no title to real estate, under section 5046, Rev. St. U. S., as against a grantee in a prior unrecorded deed, good as against the bankrupt himself, in the absence of actual fraud upon creditors in the making of such deed.

3. SAME—ELECTION BY ASSIGNEE—LACHES.

 Where an assignee in bankruptcy has once elected not to attempt to set aside a conveyance by the bankrupt, and has omitted to take any steps for that purpose within the time prescribed by statute, he cannot afterwards come into equity to attempt to assert title to the property as against a bona fide purchaser for value.

4. DEEDS—EVIDENCE OF DELIVERY—RECORD.

 A deed, duly recorded, is prima facie evidence of delivery by the grantor to the grantee, and conclusive evidence of delivery, in the absence of clear evidence to the contrary, as between them and a purchaser for value, relying upon it, unless such purchaser had or was chargeable with notice of its nondelivery.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

The only appellee concerned in this appeal is the Calumet & Chicago Canal & Dock Company, hereinafter called the "Dock Company." On February 12. 1884, the appellant, as the assignee in bankruptcy of Henry Wisner, filed this bill against George H. Waite and 20 others; and on March 26, 1888, by amendment, made the dock company a party defendant, alleging that it claimed title to the S. E. fractional ¼ (south of the Calumet river) of section 25, township 37 N. of range 14 E. of the third P. M., and also the S. E. fractional ¼ of the N. E. fractional ¼ (south of the Calumet river) of the same section, township, and range, all in Cook county, in the state of Illinois. The object of the bill is to set aside a deed of this property from the bankrupt to one John N. Wisner, his brother, bearing date January 8, 1878; and also a sale and conveyance of the same property made by John P. Wilson, as trustee, April 14, 1881, under the powers contained in a trust deed executed by the bankrupt and one Waite, to secure the purchase price of the land. The prayer is that the deed from the bankrupt to Wisner, as well as the conveyance by Wilson, may be set aside as clouds on appellant's title as assignee, and that, if any equitable rights exist under the trust deed, they may be defined and declared. The dock company, by its answer, claims title to the property as an innocent purchaser for value by mesne conveyances from John N. Wisner, and from Thomas R. Wilson and George L. Thatcher, the purchasers at the trustee's sale; and it also claims the benefit of section 5057, Rev. St. U. S., as a limitation which bars an action by an assignee in bankruptcy after two years. The facts, so far as needful to an understanding of the questions involved, are as follows:

By a special warranty deed dated July 8, 1874, delivered and recorded July 13, 1874, James L. Campbell conveyed the land in question to Henry Wisner, the bankrupt, and to George H. Waite. Wisner and Waite gave notes amounting to $12,000, constituting the principal part of the purchase money, bearing 8 per cent. interest, all of which notes, by their terms, fell due within three years from date; and contemporaneously an agreement was made, and referred to in the notes, to the effect that the notes should not be payable until certain clouds upon the title to the land should be removed, the agreement re-

citing that Campbell had already filed a bill to remove them. At the same time Wisner and Waite executed to John P. Wilson, as trustee, a trust deed to secure the payment of the notes according to their tenor. The deed did not refer to the contract shown by these notes, but contained express authority to sell the property upon default of payment, unless certain unfilled blanks therein defeated the power. The blank spaces for the time during which it was to be advertised before sale and the number of the advertisements to be made were not filled, and the record of the deed showed these blanks unfilled. On July 17, 1874, Waite quitclaimed to Henry Wisner his interest in the land by a deed which was recorded the next day, and it now appears that he took a contract from Wisner, providing that he should be entitled to a certain portion of the profits which might be derived from a sale of the land; but this contract was not recorded until August 18, 1883, which was after the dock company obtained title to the land. On July 12, 1875, a decree was entered in the Campbell suit, under the burnt record act, which, read in connection with certain deeds from Rucker to the Brighton Company, and from Forsythe to Wisner, appearing in the record, it is claimed, removed all clouds from the title. On January 8, 1878, Henry Wisner and wife executed to John N. Wisner a special warranty deed of the property in question, which was recorded February 28, 1880. On August 31, 1878, Henry Wisner filed his petition in voluntary bankruptcy, and scheduled this property, stating the value as unknown, subject to the incumbrance of the trust deed. The other assets scheduled consisted of land similarly situated. His unsecured indebtedness was scheduled at various small sums, amounting to about $1,200, and his indebtedness to his brother, John N. Wisner, was scheduled at about $5,000. Of this indebtedness only one note, amounting to $111.15, was afterwards proved up, except that his brother proved up his debt to the amount of $11,932. On December 3, 1879, Henry Wisner was adjudged a bankrupt, and the complainant was appointed his assignee, and the usual deed was made to him, which has never been recorded. On June 10, 1880, Wisner was discharged from bankruptcy. On April 14, 1881, Wilson, as trustee, having advertised the sale of the property under the terms of the trust deed for the period of 30 days, sold it at public auction, for the amount due upon the notes (about $29,500), to Thomas R. Wilson and George L. Thatcher, and executed to them a deed, which was recorded on July 20, 1881. Thatcher shortly after conveyed his interest to Thomas R. Wilson. On July 16, 1881, William B. Howard purchased the property in question from John N. Wisner, and received a deed, which was immediately put upon record. Howard paid, on the day of the delivery of the deed, for this title, and for some claims of Gilbert Wyman. $8,000. The amount paid Wisner and Wyman was $4,000 to each. On July 22, 1881, Howard purchased the title acquired under the trust deed from Thomas R. Wilson, and paid him in cash $21,750, receiving a deed which was put upon record the following day. On February 1, 1882, by a deed recorded February 20, 1882, Howard conveyed the land in question to the dock company, which paid therefor, and for other land embraced in the same deed, $200,442.50, and this entire consideration was paid in full by June 28, 1882. The deed from Howard to the dock company was recorded December 15, 1883. In March, 1882, the complainant brought a suit similar to the present one in the court below, but the dock company was not made a party to it. No process was issued and served on that bill, and on July 5, 1883, it was dismissed for want of prosecution. So much of the bill as is material to show the grounds relied on by complainant is as follows:

"And your orator alleges upon information and belief: That at the time of filing of said petition the said bankrupt was the absolute owner of the property, subject to one certain incumbrance and one outstanding claim of title under an unrecorded deed. That the outstanding unrecorded deed above referred to was a special warranty deed, purporting to be signed by the said bankrupt, dated the 8th day of January, 1878, and recorded in Book 611 of Records of Cook County, Illinois, on page 535, on the 28th day of February, 1880, by which deed the bankrupt pretended to convey the said property to one John N. Wisner, his brother. But your orator alleges that the said John N. Wisner took no title to said property, and acquired no rights therein, by virtue of said deed, as against your orator as the representatives of the credit-

ors of said bankrupt; that he never took possession of said property; and that, therefore, your orator became invested with the title to said property, subject only to the said trust deed to said John P. Wilson. And your orator alleges that the said trust deed to said John P. Wilson, and the other conveyances made thereunder by him and his grantees, and the said deed from said bankrupt to the said John N. Wisner and his grantees, constitute such clouds and stigmas upon your orator's title that he has been wholly unable, and is now unable, to sell said property for any material consideration whatsoever, and that, if such clouds are removed, he believes he can sell at once such property for enough to pay all the costs of the said bankruptcy proceeding, and to pay every creditor of the bankrupt in full. And your orator further prays that the said deed from the said bankrupt to the said John N. Wisner, and all deeds and conveyances by him or his grantees to any of the parties hereto, may be set aside and annulled and declared and decreed to be clouds upon your orator's title, and that an account may be taken of the rents, issues, and profits of said property from the 31st day of August, 1878, down to the present time, and that the said defendants, or some of them, may be decreed to pay your orator such sum as shall appear from such accounting to be justly due."

On final hearing the bill was dismissed for want of equity, and this appeal is prosecuted from that decree.

Hardy, Essick & Clark, for appellants.

Osborn & Lynde, for appellee.

Cohrs & Green, for Calumet & Chicago Canal & Dock Co.

Before JENKINS, Circuit Judge, and BAKER and GROSSCUP, District Judges.

After making the foregoing statement, the opinion of the court was delivered by BAKER, District Judge.

It is claimed that if the bill filed on March 14, 1882, was filed in time to obviate the bar of the statute of limitations, the present bill is not barred, nor is the appellant open to the charge of laches in sleeping on his rights. Appellant's counsel cite and rely on section 25 of the statute of limitations of the state of Illinois (2 Starr & C. Ann. St. 1559), and Herring v. Poritz, 6 Ill. App. 208, in support of this claim. The claim, however, is unfounded, because that bill was not filed for more than two years after the bankrupt had conveyed the land in question to his brother, who had conveyed the same to Howard, both of which conveyances were of record before the bill was filed. Besides, the dock company was never made a party to that bill, and, so far as it was concerned, it having acquired the title to the land in controversy for value before any bill was filed, the filing and pendency of the bill did not, and could not on the plainest principles of justice, arrest the running of the statute in favor of the dock company. Before the original bill was filed, the dock company had become the owner by mesne conveyances from the bankrupt and the trustee, under the trust deed, of the entire legal and equitable title to the land. A suit against strangers to the dock company's title could not impair or vary its rights or title.

On January 8, 1878, Henry Wisner and wife made and acknowledged to John N. Wisner a deed for the land in controversy, which was duly recorded in the deed records of Cook county, Ill., on February 28, 1880. This deed purported to be executed for a valuable consideration, and was perfect in form. The deed was executed 7 months and 23 days before Henry Wisner filed his voluntary

petition to be adjudged a bankrupt. It purported to convey the entire title to the lands in question, subject to the incumbrance of the trust deed, and it is conceded that it had this effect unless it can be set aside on one or the other of the grounds upon which it is assailed. It is urged that no title passed by this deed, because the grantor never delivered nor authorized the delivery of the deed to the grantee. This claim is evidently an afterthought, as the invalidity of the title by reason of the nondelivery of the deed is not charged, nor even alluded to, in the bill. The bill challenges the title conveyed by this deed on the ground that, as against the assignee in bankruptcy, no title passed to the grantee until the deed was recorded, on February 28, 1880, and that, prior to that time, the bankrupt had assigned by a proper deed of assignment the land in question, with other property, to the appellant, as assignee in bankruptcy. For this reason the question whether the deed was delivered or not was not open to inquiry without an amendment of the bill, and no amendment was asked for or made. But, if this objection was waived, the evidence of nondelivery is wholly insufficient to defeat the title of a bona fide purchaser for value. The bankrupt, Henry Wisner, alone testified to the nondelivery of the deed, and the character of his testimony, coupled with his knowledge that the deed had been placed on record before the land was sold and conveyed to Howard, would preclude him from assailing the title acquired by a purchaser for value and in good faith. A careful reading of his testimony leaves but little doubt on our mind that he not only delivered the deed, but that he knew of and participated in the sale of the land to Howard. And, even if there were an allegation in the bill of the nondelivery of the deed, and proof of less questionable character to support it, it could not avail the bankrupt or his assignee. Henry Wisner and wife had made and acknowledged a deed perfect in form to John N. Wisner, purporting to convey all his right and title to the land in question, which was of record when Howard bought of the latter; and this deed, duly recorded, was prima facie evidence of delivery by the grantor to the grantee, and conclusive evidence of delivery, in the absence of clear evidence to the contrary, as between them and a purchaser for value, relying upon it, unless such purchaser had or was chargeable with notice of its nondelivery. Warren v. President, etc., 15 Ill. 236; Grundies v. Reid, 107 Ill. 304; McDaid v. Call, 111 Ill. 298; Quick v. Milligan, 108 Ind. 419, 9 N. E. 392. The bankrupt had executed a deed perfect in form, which had been properly recorded, and had remained of record 16½ months before the land was sold and conveyed to Howard. How the deed came to get from the possession of the bankrupt he does not attempt to explain. He contents himself with the naked assertion that he neither delivered it nor authorized its delivery to his brother, who was the grantee therein. The bankrupt did not remain in possession of the land; and Howard, the purchaser, had no notice from any source that the title of record was not the true title. For aught that is shown in the record, if the bankrupt neither delivered nor authorized the delivery of the deed, he permitted it to get out of his possession,

and be placed on record, by reason of his negligence and want of care. Where one of two innocent parties must suffer from the negligence or wrongful act of a third, it is fundamental that he who gave the opportunity for the wrong shall suffer the loss. The principle has been more tersely stated thus: "He who trusts most shall suffer most." These considerations lead to the conclusion that the deed of the bankrupt conveyed his entire right and title to the land in question to John N. Wisner, and that this title has passed by mesne conveyances to the dock company, unless the failure to record the deed until after Henry Wisner had been adjudged a voluntary bankrupt, and had executed a deed of assignment to the appellant, defeated such prior grant. Counsel for the complainant strenuously contend that the prior unrecorded deed of the bankrupt to his brother did not vest in him any title as against the appellant's title as assignee in bankruptcy. Section 5046 Rev. St. U. S. provides what rights shall pass to the assignee:

"Sec. 5046. All property conveyed by the bankrupt in fraud of his creditors; all rights in equity, choses in action, patent rights and copyrights; all debts due him or any person for his use, and all liens and securities therefor; and all his rights of action for property or estate, real or personal, and for any cause of action which he had against any person arising from contract or from the unlawful taking or detention or injury to the property of the bankrupt; and all his rights of redeeming such property or estate, together with the like right, title, power and authority to sell, manage, dispose of, sue for and recover or defend the same, as the bankrupt had if no assignment had been made, shall, in virtue of the adjudication of bankruptcy and the appointment of his assignee, but subject to the exceptions stated in the preceding section, be at once vested in such assignee."

There is no allegation in the bill that the deed from the bankrupt to John N. Wisner was made with any intent to hinder, delay, or defraud any creditor, present or prospective, of the grantor, nor is it alleged that the grantor was insolvent, or in embarrassed circumstances, when the deed was executed by him. And there is no allegation that any of the creditors named in the petition, or who proved their claims, were creditors at the time the deed sought to be set aside was executed. The deed is sought to be set aside on the sole ground that the prior unrecorded deed did not, as matter of law, vest a valid title in the grantee therein as against the appellant's subsequently acquired title as assignee in bankruptcy. In support of this contention, counsel cite and rely upon Wynne's Case, 4 N. B. R. 23, Fed. Cas. No. 18,117; In re Dow, 6 N. B. R. 10, Fed. Cas. No. 2,955; Barker v. Barker's Assignee, 12 N. B. R. 474, Fed. Cas. No. 986; In re Collins, 12 N. B. R. 379, Fed. Cas. No. 3,007; and In re Gurney, 15 N. B. R. 373, Fed. Cas. No. 5,873, and cases there cited. These cases were all decided on the circuit, and most of them apparently support the views of appellant's counsel, though two of them seem to hold a contrary doctrine. These cases, however, if in point, could not be followed by us, in view of the language of the statute, and the exposition of it by the supreme court. In Warren v. Moody, 122 U. S. 133, 7 Sup. Ct. 1063, and in Adams v. Collier, 122 U. S. 382, 7 Sup. Ct. 1208, it was decided that fraud upon creditors was a necessary element to give the assignee in bankruptcy a right of action to set aside a conveyance, where the

bankrupt would not have had such right, and that insolvency, of itself, or the fact that the property conveyed constituted more in value than the grantor could rightfully withdraw from the reach of creditors, would not, of themselves, vest such right of action in the assignee. There must be fraud, for so the statute says. Insolvency not known, or only disclosed by subsequent events, or the fact that such events showed that the property conveyed was an undue part of the estate of the grantor, are not to be deemed frauds per se, regardless of a fraudulent intent. As the statute bottoms the right of the assignee to recover upon the existence of fraud, it must be alleged and proved. In Warren v. Moody, 122 U. S. 132, 136, 7 Sup. Ct. 1063, the court say:

"It will be noticed that the bill does not attack the deed on the ground of fraud. It does not allege that it was made with the intent to delay, hinder, or defraud the creditors named in the bill, or any other creditors of Kennedy. It does not allege that there are no other creditors than those named in the bill, or any creditors who became such after the making of the deed. The sole ground on which it proceeds is that the deed is a voluntary deed, and is void as against the persons who were creditors of Kennedy prior to the making of the deed. It is claimed that the plaintiffs, as assignees in bankruptcy, represent the debts of these creditors for the purpose of the suit, and, no fraud in fact, or intent to commit a fraud, or to hinder or delay creditors, being alleged in the bill, the case is not one in which the plaintiffs can set aside the deed as being a deed of property conveyed by the bankrupt in fraud of his creditors, even though the conveyance may have been invalid under the statute of Alabama."

The deed sought to be set aside in the present case was not invalid under the statute of Illinois (1 Starr & C. Ann. St. 591). In Hardin v. Osborne, 94 Ill. 571, it was said:

"When a bankrupt had conveyed land prior to the time he was adjudged a bankrupt, and the deed remained unrecorded, no title would pass to the assignee, or as against the purchaser holding under a prior unrecorded deed; and, so far as this jurisdiction is concerned, we regard it as settled that the assignee takes no better or greater title as against an unrecorded deed than was held by the bankrupt."

And it is incontrovertible that Henry Wisner, the bankrupt, could not successfully assail the title conveyed to John N. Wisner on the sole ground that the deed executed by him had been left unrecorded. The same doctrine is affirmed in Yeatman v. Institution, 95 U. S. 765, and Stewart v. Platt, 101 U. S. 731. In the case last cited it is said that:

"The failure to file a mortgage does not impair its validity as between the mortgagee and the mortgagors, or the assignee in bankruptcy of the latter. The assignee can assert, in behalf of the general creditors, no claim to the proceeds of a sale of the property, if the bankrupts of themselves could not have asserted it in a contest exclusively between them and the mortgagee."

The record shows that within the time prescribed by the statute (section 5057, Rev. St. U. S.) the assignee took no steps to set aside the deed in question. There is the direct evidence of the assignee himself to the effect that he deliberately and understandingly elected not to assert any right to the property. He testified:

"I made all the inquiry possible at that time as to the indebtedness and value of the property. The unpaid amount, with the accumulated interest, stands on the schedule; and my opinion was, as I remember it now, that it was about a stand-off—property worth just about the debts."

He never placed the deed of assignment on record, and the evidence shows that the present suit is being prosecuted at the solicitation of the bankrupt, who has paid all the costs and expense of the suit. Under these circumstances, the assignee is not only bound by the statute of limitations, but he is now estopped from asserting a right to the premises against a bona fide purchaser for value. It is for him to determine whether or not in the given case he will assert his right to the property. He may elect not to charge the estate with the burden of taking charge of property which he deems to be of no value above the liens upon it. This election he must exercise within a reasonable time, and a failure to do so as against third parties dealing with the property in good faith will be construed as an election not to assert a claim to the property. After he has, as in this case, deliberately elected not to assert any claim to the property, he cannot come into a court of equity, and, in spite of laches and acquiescence of the most pronounced character, invoke its aid to wrest from a bona fide purchaser for value the premises in controversy. Sparhawk v. Yerkes, 142 U. S. 1, 12 Sup. Ct. 106; Taylor v. Irwin, 20 Fed. 620.

In view of what we have already said, it is not necessary for us to determine whether or not the sale and conveyance made by John P. Wilson, as trustee, by virtue of the trust deed, were authorized by its terms, and passed to the purchasers a valid, legal title to the premises. Such sale and conveyance at least operated to invest the purchasers with the title to the premises as incumbrancers holding under an unforeclosed mortgage. They have the right in equity, as against the assignee, to keep the incumbrances on foot for the protection of the legal title acquired under the deed of the bankrupt to John N. Wisner. We are of the opinion that the suit is barred by the statute, and that the laches of the complainant also presents an insuperable barrier to the maintenance of this suit. It is not necessary further to discuss these questions, because we have reached the conclusion that the title of the dock company cannot be successfully assailed on the ground alleged in the bill.

The decree of the court below is affirmed, at the cost of the appellant.