Argued February 24, affirmed March 16, 1920.

## WEST *v.* MARION COUNTY.*

(188 Pac. 184.)

**Counties—Claim for Injuries from Defective Highway not Required Before Suit.**

1. An action for damages for injuries from defective highway can be brought against county without first presenting claim for damages to county court; the presentation of such claim being unnecessary where the controversy is over a tort.

**Highways—Whether Automobile Driver had Obtained License Held Jury Question.**

2. In action against county for injuries to automobile driver from defective highway, question as to whether driver had obtained the license required by Section 6375, L. O. L., *held* for jury.

**Highways—Accident Subsequent to One in Which Plaintiff was Injured Inadmissible.**

3. In automobile driver's action for injuries from defective highway, evidence of another accident at a period long after the occurrence of the accident in which the plaintiff had been injured was not admissible for the purpose of showing notice of defect to defendant county, or for any purpose.

**Highways—Evidence of Condition of Road at a Time Subsequent to Accident Held Admissible.**

4. In action for injuries from defective highway, evidence as to condition of road a year subsequent to the occurrence of the accident was admissible upon a showing that the condition of the road had not changed during the year.

---

*Authorities passing on the question as to nonobservance of public regulations by one using highway or bridge as affecting recovery for damages caused by obstruction or defect therein are collated in a note in 42 L. R. A. (N. S.) 1035.

On admissibility of evidence of condition of highway before and after accident, see note in 32 L. R. A. (N. S.) 1104.

On effect of operating automobile upon highway without a license, see notes in 25 L. R. A. (N. S.) 561; 25 L. R. A. (N. S.) 734; 35 L. R. A. (N. S.) 699; 41 L. R. A. (N. S.) 307; 52 L. R. A. (N. S.) 801; L. R. A. 1915D, 628; L. R. A. 1916E, 1225.   REPORTER.

Trial—Refusal of Requested Instruction on Proximate Cause not Reversible Error, Where Same Point was Covered by Other Instruction.

5. In action against county for injuries to automobile driver from defective highway, sustained after driver had turned from highway upon approaching automobile coming from opposite direction, refusal to give defendant's requested instruction as to its nonliability if the proximate cause of the accident was the negligence of driver of other automoblie in failing to have automobile lights properly dimmed *held* not ground for reversal, in view of other instruction given covering substantially same ground.

Highways—County Liable Where Defective Road Contributing Cause of Accident.

6. If automobile driver was blinded by lights of approaching car and was injured in swerving from road because of road's defective condition, county was liable notwithstanding negligence of driver of other automobile, since the defect in the road was one of the contributing causes of the accident.

From Clackamas: JAMES U. CAMPBELL, Judge.

Department 2.

This is an action against the county to recover damages for injuries resulting to the person of the plaintiff, and to his automobile, caused by the car leaving the road and turning over. The plaintiff claims the injury was caused in whole or in part by the defective and dangerous condition of the road.

The road, where the accident occurred, was near the town of Gervais at a point where the road leading from Oregon City to Salem crossed a gulch or canyon. There was a culvert at the bottom of the gulch over which the road passed, and the approach to this culvert was upon a fill.

The evidence for the plaintiff tended to show that this fill, at the point where the car ran off, was about seven or eight feet above the level, and that the top of the fill, or roadbed, at this point was about 16 or 17 feet wide, having narrowed down from a greater width at a point further back from the culvert. There was no rail or guard along the sides. There was some evidence that there was a slight turn in the road to the left going south, at or about the point in question.

. It was Fair time, and the plaintiff was driving on the road from Oregon City toward Salem. It was dark, and when the plaintiff reached the fill in question, he met a number of automobiles coming from the Fair. Several of these had their lights lit, and one in particular did not dim its lights, and the reflection in plaintiff's eyes blinded him so he could not see the road. Under these conditions he got too far to the right, and his car ran off the grade and down the bank, causing the injuries complained of. Plaintiff brought this action to recover general and special damages in the aggregate amount of $1950. There was a verdict and judgment in his favor for the sum of $626.80, from which the defendant appeals.

The appellant claims the judgment should be reversed:

First: because there was no evidence that the claim for damages had been submitted to the County Court before the action was brought.

Second: the appellant claims there was no sufficient proof that plaintiff had obtained a license and was lawfully traveling on the highway.

Third: appellant claims that evidence of another accident at the same place after the main occurrence was erroneously admitted.

Fourth: there was error in refusing an instruction as to the liability of the defendant when the accident was caused by the negligence of a third party.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Max Gehlhar,* District Attorney, and *Mr. James G. Heltzel,* with an oral argument by *Mr. Gehlhar.*

For respondent there was a brief over the name of *Messrs. Cleeton & McMenamin,* with an oral argument by *Mr. T. J. Cleeton.*

BENNETT, J.—Appellant claims that before an action can be commenced against a county on any kind of a claim, the same must first be presented to the County Court, and, as there is no evidence that this claim was so presented, the motion of the defendant for a nonsuit and directed verdict should have been allowed.

This question seems never to have been passed upon directly by this court, in a case where the action was for damages resulting from a tort, and against a county.

The appellant relies upon the cases of *Union County* v. *Slocum,* 16 Or. 237 (17 Pac. 876), and *Wallowa County* v. *Oakes,* 46 Or. 33 (78 Pac. 892), both of which were based upon claims against the county for services rendered.

In the Slocum case the plaintiff had commenced an action in the Justice's Court to recover for the alleged value of his services in reporting testimony at the request of the committing magistrate. There was a writ of review, and in passing upon the same Mr. Justice THAYER, delivering the opinion of the court, said:

"The facts recited in the complaint did not constitute a cause of action. The services of the respondent alleged therein to have been rendered created no claim against the county of Union, and if it had, the respondent could not have maintained an action thereon without presenting his account therefor to the County Court of said county for audit and allowance."

In *Wallowa County* v. *Oakes,* 46 Or. 33 (78 Pac. 892), the plaintiff was seeking to recover his fees as a magistrate, in a criminal case. After holding that a justice of the peace is entitled to recover such fees, the court said:

"This brings us to a consideration of the question whether or not an action at law can be maintained

against a county .to recover a compensation which the law has prescribed for the performance of an official duty. It must be admitted that, as a condition precedent to the right to maintain such action, the claim of the officer for the fees earned must have been presented to and rejected by the County Court sitting as a board of county commissioners for the transaction'': Citing *Union County* v. *Slocum,* 16 Or. 237 (17 Pac. 876).

In neither of these cases is there anything to disclose upon what reasoning the conclusion of the court was based, and in neither was there any citation of authorities.

The attorneys for the plaintiff, on the other hand, allege a distinction between such cases, where the claim is upon an implied contract, and cases where a claim is based upon a tort, as in this case, and rely upon *Sheridan* v. *City of Salem,* 14 Or. 328 (12 Pac. 925) ; *Caviness* v. *City of Vale,* 86 Or. 554 (169 Pac. 95), and *Colby* v. *Portland,* 89 Or. 556 (174 Pac. 1159, 3 A. L. R. 819). In none of these cases was the county a party defendant, but the reasoning seems to be applicable to a case against a county.

*Sheridan* v. *City of Salem,* 14 Or. 328 (12 Pac. 925) was an action against the City of Salem for injuries caused by a defective walk. There was a provision in the city charter that—

''No claim against the city shall be paid until it is audited and allowed by the common council, and then the treasurer shall pay it upon a warrant drawn upon him by the recorder.''

The court said:

''We do not think that these provisions were intended to apply to a claim of this character. * * All claims arising out of the ordinary expenditures of the city are required to be presented to the common council for allowance, before an action can be maintained thereon. But that arises out of a relation the claimant sustains

to the city, created by an employment or contract of some character. Thus, a person who performs service or does something for the city at its request, for which compensation is to be made, tacitly agrees that he will present his claim to the common council for audit and allowance. That is the only mode by which the city can pay him. * * But in cases of tort, the action is for damages, and the party injured is under no more obligation to present the claim to the corporation, than he would be to a private person who had done him a wrong. The reason of the rule only applies to the former class of claims, and not to the latter, and has no application whatever to them."

In *Caviness* v. *City of Vale,* 86 Or. 554 (169 Pac. 95), the Sheridan case was cited with approval, and it was held that the provision of the city charter, requiring claims against the city to be audited and allowed by the common council, before they were paid, "Did not apply to claims arising *ex delicto.*"

In *Colby* v. *Portland,* 89 Or. 566 (174 Pac. 1159, 3 A. L. R. 819), the two previous cases were again reaffirmed, the court saying:

"We adhere to the conclusion reached in that case by the Chief Justice. We do not believe that this section was ever intended by the framers of the charter to apply to actions *ex delicto.*"

If a claim for a tort does not have to be presented to the city council, notwithstanding a provision that "no claim shall be paid until it is audited and allowed by the common council," we think we would not be justified, in attempting to make a distinction between claims against the city, and claims against the county, for tort, where there is absolutely no provision in the law requiring a claim against the county to be submitted to the County Court.

1. Upon the authority of these cases we therefore hold, that where the controversy is over a tort, it is

not necessary that the claim be presented to the County Court before an action can be brought.

The next contention of appellant is, that there was no sufficient proof that the plaintiff had obtained an automobile license and was in this respect lawfully traveling upon the road.

Section 6375, L. O. L., provides:

"Whenever any individual, *while lawfully traveling* upon any highway of this state or bridge upon such highway, the same being a legal county road, shall, without contributory negligence on his part, and without knowledge upon his part of the defect or danger, sustain any loss, damage, or injury in consequence of the defective and dangerous character of such highway or bridge, either to his person or property, he shall be entitled to recover of the county in which such loss, damage, or injury occurred, compensatory damages, not to exceed the sum of $2,000 in any case by an action in the Circuit Court of such county, or in a Justice's Court therein, if the amount of damages sued for shall not exceed the sum of $250."

There seems to be some conflict in the authorities as to whether provisions like this in statutes apply in remote matters, like obtaining a license or unlawfully traveling on Sunday, which are not directly connected in any way with the cause of the accident, or as to whether they are only intended to apply where the unlawfulness refers to the manner of traveling, and has some connection with the cause of the injury.

The only cases in this court, in which the foregoing section seems to have been construed, were cases where the unlawfulness complained of had a direct connection with the occurrence.

In *Jones* v. *Union County,* 63 Or. 566 (127 Pac. 781, 42 L. R. A. (N. S.) 1035), the injury to the plaintiff occurred while he was attempting to cross a bridge on the public highway without having first laid planks,

as required by Section 6337, L. O. L. The court considered the authorities, permitting a plaintiff to recover where he was traveling without a license, etc., but does not seem to pass upon that question, stating the grounds of its decision as follows:

"Under the legal principle thus announced, if the statute adverted to is valid, it follows that when the plaintiff's husband undertook to guide the traction engine over the bridge, without using any plank, as required by Section 6337, L. O. L., he was not 'lawfully' traveling upon the highway, and this action cannot be maintained."

To the same effect is *Bailey* v. *Benton County*, 61 Or. 390 (111 Pac. 376, 122 Pac. 755).

In both of these cases, and also in the case of *Buttel* v. *Douglas County*, 87 Or. 105 (168 Pac. 1180), the court reiterates the general principle declared by the statute, that—

"Under this legislative enactment it is incumbent upon the plaintiff before he can recover for an injury caused by a defective and dangerous condition of a county highway to prove that he was lawfully traveling thereon; that he was injured by reason of a defect therein; that his own negligence did not contribute to such injury, and that he had no knowledge of the defect or dangerous condition."

2. Assuming, however, but not deciding, that a person must have obtained a license for his automobile before he can recover from the county under the statute, for injuries occurring while he was traveling in such automobile; we think the evidence in this case was sufficient to carry the case to the jury in that regard, and to justify the jury, in the absence of any showing to the contrary, in finding that he had obtained a license and complied with the law, and was therefore within the terms of the statute.

The appellant also claims that there was error in the rulings of the court below, in relation to the evidence of one Sanborn. The witness having testified that he traveled over the road, about a year after the accident in which the plaintiff was injured; the following evidence, colloquy and rulings occurred:

"A. This year, 1918. We got down there at 10:30 in the morning, and we were driving down this hill, and across this particular fill, when there was a noise of some sort—what caused it we don't know—but immediately the car took right off the side of this fill.

"Mr. Gehlhar: If the court please, may I ask a question?

"Court: Yes.

"Mr. Gehlhar: When did this happen?

"A. The Sunday before, or the second Sunday before Labor Day.

"Court: 1918, this year?

"Yes, sir.

"Mr. Gehlhar: That has no connection with the case. There is a year between. I move to have it stricken out.

"Court: If he can connect up the fact that the road is in the same condition now as then—

"Mr. Gehlhar: (Interrupting.) I save an exception.

"Court: Only that part as to his observation of the road, however. There is nothing else that would be admissible in this case. The answer to the question is that he was traveling toward Salem the Sunday before, or the second Sunday before Labor Day, 1918.

"Q. Now, did you observe the road there at that point?

"A. Yes, sir.

"Q. The character of the road?

"A. Yes, sir.

"Mr. Cleeton: I want to offer to prove by this witness something that I don't care to speak out before the jury, but I can come with counsel to the court's desk and make my offer. [Does so.] Assuming this road is in the same condition, I want to show that this

man himself ran over the grade just at the same point and broke up his car and injured his wife and child. That on the ground that the road actually is dangerous. It is going to the question as to whether or not that is a dangerous place in the road. Accidents have happened before and since, and, if the road is in the same condition, it is a matter—

"Court: (Interrupting.) That would be a collateral issue which we would have to try the whole matter out to find out whether it was through his carelessness before the jury could say whether it was caused by the defective or dangerous condition. That whole question would have to be tried out."

3. It is entirely clear that the evidence of another accident at a period long after the occurrence in question was not admissible for the purpose of showing notice, or for any purpose, but we do not understand that the court ruled that it was admissible—on the contrary, it seems clear that the court did not, but intended to and did exclude the evidence in question, in so far as it applied to any accident, at the later date. There is no claim that the condition of the road had changed in any regard. In fact, the testimony tended to show that it was in the same condition.

4. Under these circumstances the testimony of the witness, as to the width of the road and the height of the grade, etc., was competent, and this seems to have been the only portion of his testimony admitted by the court. We think there was no error in this regard.

The only other question discussed in the brief of appellant, is the claim that the court erred in refusing instruction No. 8, asked by appellant, which was as follows:

"If you find that the accident and injury of plaintiff was caused solely by the negligence of the driver of the machine which was coming north on the highway, in that he failed to properly dim his lights, thereby blind-

ing the vision of the plaintiff and causing him to drive off the embankment, then you must find for the defendant. In other words, Marion County is not liable for injuries caused directly by the negligence of other drivers. But if, in addition to that, there was a defect also in the highway, which contributed to the accident which caused the injury, then he should recover; the other elements that I have just described to you being also proven, that is, that he was without contributory negligence, and had no knowledge of the defect and was lawfully traveling on the highway.''

The court refused this upon the ground that it was already covered by the general instructions. The instruction of the court in relation to this matter, was as follows:

''There is another element in this case; He alleges that he was coming down the hill and another automobile turned its flash light in his eyes thereby blinding him and stunning him for the time being so that he was unable to see. And you have a right to take that into consideration. If the proximate cause was the blinding, caused by the other man, then the other man would be responsible, if the county was free from negligence, or if there were no defects or dangers in the highway.''

5. The instruction asked for by the defendant was carefully prepared, and was fair and reasonable, and we see no reason why the court should not have given it, as requested.

It is the opinion of this court, however, that the instruction given by the court below upon this question, substantially covered the instruction asked for—indeed, in some respects it was stronger for the defendant than the instruction requested. We think the jury could not have failed to understand from the instruction that if the sole, or even the proximate cause of the accident, was the act of the man in the other car,

in not turning down his lights, that the plaintiff could not recover.

6. Besides, the question as to whether or not the highway was defective and dangerous, as alleged by the plaintiff, at the point in question, was squarely submitted to the jury, and it must have found that it was. The undisputed evidence showed that the plaintiff's car actually did run off the grade at this point, and if there was a defective and dangerous condition, in the narrowing of the grade and the failure to provide a guard-rail, as alleged in the complaint, there is no room to question that such defective and dangerous condition did contribute to the injury. In other words, there is an undisputed physical demonstration that the narrowness of the grade at that point, and the absence of a guard-rail, was, in a measure, one of the contributing causes of the accident.

There are two other instructions which were requested by the defendant and refused by the court, which are assigned as error. Neither of them are discussed in the brief of appellant. However, we have examined them and are of the opinion that they were fully covered by the general charge.

The judgment of the court below is affirmed.

AFFIRMED.

BENSON, BEAN and JOHNS, JJ., concur.